# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| ROBERT ALLEN TRIBBLE | ) | |
| | ) | |
| v. | ) | 1:05-cv-17 \ 1:01-cr-68 & 1:02-cr-188 |
| | ) | *Chief Judge Curtis L. Collier* |
| UNITED STATES OF AMERICA | ) | |

## MEMORANDUM

Robert Allen Tribble ("Tribble") has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  Tribble contends the judge who accepted his guilty plea had a conflict of interest, defense counsel who immediately withdrew after he entered his guilty plea had a conflict of interest, his guilty pleas in these cases were coerced by counsel and the prosecutor, and his sentencing guidelines were miscalculated and in violation of *United States v. Booker*, 543 U.S. 220 (2005).  For the reasons which follow, Tribble's § 2255 motion is without merit and will be **DENIED**.

Having reviewed the materials thus submitted, together with the complete record of the underlying criminal case, the Court finds they show conclusively defendant is not entitled to relief on the claims asserted.  Accordingly, the Court will decide the matter and explain the reasons Tribble's asserted grounds for relief are without merit, without an evidentiary hearing.  Rule 8(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts.

## I.    NONDISPOSITIVE MOTIONS

After the government filed its response, Tribble filed two motions requesting judgment by default (Court File Nos. 8 & 10).  Accordingly, these motions will be **DENIED** as **MOOT** (Court File Nos. 8 & 10).

## II.    28 U.S.C. § 2255 - STANDARD OF REVIEW

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255. Under Rule 8(a) of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to review the answer, any transcripts, and records of prior proceedings and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). Tribble has failed to present any facts which establish that his sentence is subject to collateral attack under § 2255.

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d

1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

## III.    BACKGROUND

### A.    *Procedural Background*

Tribble pleaded guilty on January 23, 2002, in criminal case number 1:01-cr-68 to Count One of a two-count superseding indictment, charging him with knowingly executing and attempting to execute a scheme and artifice to defraud a financial institution and obtain moneys, funds, and credits under the custody and control of a financial institution, by means of false and fraudulent pretenses, representations, and promises in violation of Title 18, United States Code, Section 1344.

On May 24, 2002, Judge Edgar *sua sponte* recused himself and the case was reassigned to the undersigned. On June 28, 2002, Tribble's court-appointed attorney (Ms. Rita LaLumia) moved to withdraw on grounds of a conflict of interest and the motion was granted (Court File Nos. 49, 51). Attorney Lex Coleman was appointed to represent Tribble (Court File No. 51).

On November 7, 2002, Criminal Case Number 1:02-cr-188 was transferred to this district from the District of South Carolina. Tribble entered guilty pleas to Counts Two through Six of a Six-Count Superseding Indictment returned in the District of South Carolina and transferred to this Court. Count Two and Three of the Six-Count Indictment charged him with transfer of false identification in violation of 18 U.S.C. §§ 1028(a)(2) and (c)(3)(B); Court Four, charged him with

possession of a document making implement in violation of 18 U.S.C. § 1028(a)(5) & (c)(1); and

Count Five and Six charged him with making a false statement in application of a passport in

violation of 18 U.S.C. § 1542. Tribble was subsequently sentenced in both cases on February 21,

2003.[1]

Tribble's sentencing guidelines offense level was determined to be 13; his criminal history

category was IV; and his guideline range was calculated as 24-30 months imprisonment. On

February 21, 2003, this Court sentenced Tribble to concurrent 30 month imprisonment sentences on

each of the six counts to which he pleaded guilty, five years supervised release, $13,500.00

restitution, $600.00 special assessment, and a fine of $20,000.00.

Tribble appealed the amount of restitution and fine imposed by the district court. The district

court's decision was affirmed on August 6, 2004, by the Sixth Circuit Court of Appeals. *See United

States v. Tribble,* No. 03-5467(6th Cir. 2004) (Criminal Case Number 1:01-cr-68, Court File No.

109). Tribble filed the instant § 2255 motion on January 18, 2005.[2]

### B. Factual Background

In the underlying offense conduct in connection with the bank fraud offense in this district

Tribble agreed to the following facts:

> Mr. Tribble devised a scheme to defraud in which he would purchase cashier's
> checks in nominal amounts such as $5.00 and then counterfeit a check. He would
> then use the counterfeit check to purchase property from individuals. In the instant

---

[1]      Mr. Coleman represented Tribble in Criminal Case Numbers 1:01-cr-68 and 1:02-cr-188.

[2]      Tribble filed a document which he titled a memorandum in support of his § 2255 motion in 2006. However, the one-year statute of limitations for filing his § 2255 motion expired in 2005, and since the new claims raised in the memorandum do not relate back to his original § 2255 motion, they are time-barred from § 2255 review. *See* Fed.R.Civ.P. 15.

case, the property he is charged with purchasing includes a 1990 Coachman motor home for $15,000.00, a car trailer for $1,500.00, and a diamond ring for $4,000.00. Each of these was purchased with a counterfeited cashier's check from the SunTrust Bank, a federally insured financial institution. The Coachman motor home was purchased in Cleveland, Tennessee, and recovered in Augusta, Georgia.

This scheme was executed on or about August 25, 1999, when the defendant purchase[d] a $5.00 cashier's check for $10.00 from the SunTrust Bank, Chattanooga, Tennessee, the deposit of which were insured by the Federal Deposit Insurance Corporation.

(Crim. Case No. 1:01-cr-68, Plea Agreement, Court File No. 43).

The factual basis supporting Tribble's plea of guilty to Counts 2-6 of the Superseding Indictment returned in the District of South Carolina is detailed in five pages of facts which explains the scheme to create and distribute fraudulent identification documents (Crim. Case No. 1:01-cr-68, Court File No. 53). Accordingly, only a brief synopsis of the facts (taken from the Presentence Investigation Report) is necessary at this point. Tribble, who identified himself as the attorney for two individuals, assisted them in handling much of the application for passports and also provided the passport inspector with Georgia birth certificates, that were later determined to be counterfeit. In addition, the social security numbers on the applications were assigned to two infant children in South Carolina and the two individuals were determined to be illegal immigrants from Mexico (PSI p. 5-6).

## IV. ANALYSIS

### A. *Procedural Bar*

Although Tribble's claims are confusingly pled, the Court has deciphered his motion relating to Criminal Case Number 1:01-cr-68 (Tennessee Bank Fraud Case) to raise claims that the District Judge who presided over his rearraignment proceedings should have recused himself prior to Tribble's rearraignment; Ms. LaLumia, the attorney who represented him at the rearraignment

should have withdrawn prior to his rearraignment due to a conflict of interest; and his guilty plea was coerced as a result of ineffective assistance of counsel or prosecutorial misconduct. In Criminal Case Number 1:02-cr-188 Tribble claims his pleas in this case were also coerced as a result of ineffective assistance of counsel on the part of Mr. Lex Coleman (this claim is not procedurally barred); his plea was coerced as a result of prosecutorial misconduct; and his sentence was calculated in violation of the United States Sentencing Guidelines ("USSG").

Other than the ineffective assistance of counsel claim against Mr. Coleman, Tribble procedurally defaulted all of the claims he raises in his § 2255 motion when he failed to raise them in the District Court or on direct appeal. Consequently, he faces the procedural bar of timeliness on those claims because they should have been presented in the district court or on direct appeal.

An issue that should have been raised in the district court or on direct appeal may not be raised for the first time on collateral review without showing cause for the procedural default and actual prejudice as a result of the error, or that the party is actually innocent. *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir.), *cert. denied*, 516 U.S. 904 (1995); *Callahan v. United States*, 881 F.2d 229, 231 (6th Cir. 1989), *cert. denied*, 494 U.S. 1083 (1990); *Zack v. United States*, 915 F.Supp. 913, 916 (E.D. Mich. 1996), *aff'd sub nom. Vicary v. United States*, 89 F.3d 837 (6th Cir. 1996). Tribble raises issues that he failed to raise initially either during sentencing or on direct appeal. Therefore, the proper standard of review for the issues he failed to raise at sentencing or on direct review is the cause and actual prejudice, or actual innocence standard. Tribble has failed to show reasonable cause for failure to raise the issues of recusal, ineffective assistance of counsel due to conflict of interest, coerced guilty plea, and misapplication of the sentencing guidelines. In addition, Tribble has failed to demonstrate actual prejudice. Other than a general claim that counsel

failed to raise these issues, Tribble has not submitted any reason for his failure to raise the issues, either during his sentencing hearing or on direct appeal (Court File No. 1). Moreover, he has not shown any prejudice or demonstrated that he is actually innocent. Consequently, these claims are procedurally barred from review.

However, assuming *arguendo* that Tribble's claims are not procedurally barred, his claims would still be dismissed for the reasons which follow.

### B.      Judicial Conflict of Interest/Recusal of Judge

Tribble contends the District Judge who presided over his rearraignment proceedings in the Tennessee Bank Fraud case recused himself immediately after accepting a guilty plea from him. According to Tribble, when the Judge was presiding over his rearraignment, he believed Tribble had been involved in the mailing of a threatening letter to him. Tribble presumably contends that the District Court Judge's recusal was mandated by 28 U.S.C. § 455(a), which states that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Tribble contends the District Judge should have recused himself prior to accepting the guilty plea because he had a conflict of interest upon learning of the alleged threat towards him by Tribble. Basically, Tribble is complaining of a purported conflict that he created.[3]

A judge is required to recuse in cases where he has been genuinely threatened because a reasonable observer would think that such judge would want the defendant convicted and given a longer sentence than the defendant might otherwise receive. *In re: Nettles*, 394 F.3d 1001 (7th Cir. 2005) ("The cases [none in this court] that have addressed the issue of recusal based on threats have

---

[3]      Tribble entered a guilty plea to aiding and abetting the sending of the letter to the Judge.

held that a threat to a judge that appears to be genuine and not just motivated by a desire to recuse the judge requires recusal."); *United States v. Yousef*, 327 F.3d 56, 170 (2nd Cir. 2003) ("where a threat is made simply 'to harrass,' recusal is not warranted" (citations omitted)). In addition, "if a judge concludes that recusal is at least one of the defendant's objectives (whether or not the threat is taken seriously), then section 455 will not mandate recusal because that statute is not intended to be used as a forum shopping statute." *United States v. Greenspan*, 26 F.3d 1001, 1006 (10th Cir. 1994).

There is no evidence before this Court that suggests the Judge knew, at the time he presided over Tribble's rearraignment proceedings, that Tribble was being investigated for sending a letter to him suggesting that he would die a slow death from the white powder present in the envelope.[4] Tribble asserts, without providing any factual support, that the District Court Judge was advised by Assistant United States Attorney "AUSA" Humble in November of 2001 that Tribble was a suspect in the threatening letter case. Tribble has not submitted any evidence to support this allegation and the record reflects that the parties involved in sending the letter were only revealed after an extensive investigation.[5]

The letter was received at the courthouse on November 19, 2001, and an investigation ensued

---

[4]     Lab reports indicate the substance was not toxic.

[5]     The envelope had a return address of T. Johnson and the address for CCA Silverdale. Tribble had passed a note to the warden telling him that other federal inmates had written a threatening letter to a federal judge and were going to use Johnson as the scapegoat. Other federal inmates in the unit had been sentenced by the Judge presiding over Tribble's rearraignment and Tribble's case was pending before the Judge. Each inmate was interviewed, polygraphed, and submitted to DNA testing. The investigation revealed only Tribble's DNA on the letter and polygraph results indicted the response of the inmates, with the exception of Tribble, were not deceptive. The responses of Tribble to questions regarding the writing and mailing of the letter indicated deception. *See* PSI Report in Crim. Case No. 1:05-cr-33, pp. 3-5.

which included interviews, polygraph testing, and DNA testing. Tribble was indicted on March 11, 2003, for sending the letter. Tribble appeared for re-arraignment in the Tennessee Bank Fraud case on January 23, 2002, after the letter was received at the courthouse but before Tribble was indicted for sending the letter.[6] The Judge accepting that plea recused himself on May 24, 2002, months before the grand jury returned the indictment against Tribble for sending the threatening letter (Crim. Case No. 1:01-cr-68, Court File No. 47)

Although there is no evidence of the length of the investigation reflected in the Presentence Investigation Report, there is no evidence before this Court that the District Judge presided over Tribble's rearraignment proceeding with the knowledge that Tribble was involved in sending the threatening letter to him. Therefore, these allegations are not sufficient to constitute grounds for recusal pursuant to 28 U.S.C. § 455.[7]

The proponent of recusal must identify facts that "might reasonably cause an objective observer to question [the Judge's] impartiality." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988). Tribble has not demonstrated that conditions existed requiring the District Judge to disqualify himself from presiding over Tribble's rearraignment. Tribble has presented no evidence that the District Judge knew that Tribble was involved with the threatening letter at the time

---

[6] Tribble entered his guilty plea to the South Carolina charges on November 7, 2002, before the undersigned.

[7] Although Tribble objects to the judge presiding over his rearraignment, he does not allege the proceeding was the product of any improper bias or prejudice on the part of the Judge. There is nothing in the record demonstrating the District Judge displayed a deep-seated favoritism or antagonism to either party during the rearraignment proceeding which would make a fair, impartial entry of a plea of guilt impossible.

he presided over his rearraignment.[8]  Consequently, he has not demonstrated the District Judge was disqualified to preside over his rearraignment.

In conclusion, Tribble is not entitled to § 2255 relief on his recusal claim for two reasons. First, Tribble's recusal claim is procedurally barred from review since Tribble failed to raise this issue in the District Court or on direct appeal; has shown neither cause nor prejudice; and has not demonstrated the alleged error qualifies as a fundamental defect which inherently results in a miscarriage of justice.  In the alternative this claim is devoid of merit as Tribble has not demonstrated that the District Judge should have recused himself prior to presiding over Tribble's rearraignment.

## C.      *Ineffective Assistance of Counsel*

Tribble asserts two claims against defense counsel (Ms. LaLumia) who represented him during his re-arraignment on the Tennessee Bank Fraud case.  First he claims counsel was ineffective because she permitted the government attorney to send Tribble a threatening letter which in effect coerced his guilty plea because the letter threatened retaliation against him, his children, and his family.  Second, he claims that Ms. LaLumia, who withdrew as his counsel after entry of the guilty plea in the Tennessee Bank Fraud case, had previously represented one of his co-defendants[9] in the threatening letter case and thus, had a conflict of interest and should have withdrawn prior to entry of the guilty plea.

---

[8]      The District Judge who presided over the rearraignment proceeding is not the Judge who accepted the plea agreement in this case.  The plea agreement in this case was not accepted until February 21, 2003, when the undersigned accepted it at the sentencing hearing (Sentencing Hearing Transcript, p. 2).

[9]      Mr. Wagner has previously been sentenced by the District Judge presiding over Tribble's rearraignment.

Tribble also claims his pleas in the South Carolina cases were coerced due to Mr. Coleman's ineffective assistance. In support of this claim, Tribble contends the threatening letter from the South Carolina AUSA required him to also plead guilty in the South Carolina case to prevent injury to his family (Court File No. 7). After a brief discussion of the applicable law, the Court will address these claims of ineffective assistance of counsel in turn.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). The Court of Appeals for the Sixth Circuit has instructed that a defendant's sentence will not be vacated on the ground that the guilty plea was coerced where the defendant was "carefully interrogated by the trial judge with respect to the offense committed," where the defendant was represented by "competent counsel," and where the defendant "discussed the offenses freely and voluntarily and freely admitted guilt, while fully aware of [his] rights." *United States v. Parker*, 292 F.2d 2, 3 (6th Cir. 1961); *see also Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992) (A defendant's "decision to lie to the district court cannot amount to prejudice.").

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, *i.e.*, counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defense, *i.e.*, deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88.

There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance and that conduct cannot be viewed in hindsight, but must be evaluated for reasonableness within the context of the circumstances at the time of the alleged errors. *Strickland*, 466 U.S. at 689-90. A defendant's challenge to such decisions must overcome a presumption that

the challenged actions might be considered sound trial strategy. *McQueen*, 99 F.3d at 1311; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).

When a defendant challenges his guilty plea, to establish the prejudice prong, he must demonstrate that without counsel's alleged errors, he would not have pled guilty, but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 56, 59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995). "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998), quoting *Strickland v. Washington*, 466 U.S. at 690. "An error of counsel,

even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Id.* at 691.

1.      *Coerced Guilty Plea*

Tribble's claims that his guilty pleas were coerced due to ineffective assistance of counsel are confusing pled and difficult to decipher. Tribble was represented by Ms. LaLumia when he was

rearraigned and entered his guilty plea on the Tennessee bank fraud charge. Tribble was represented by Mr. Coleman at his rearraignment on the South Carolina charges and at the sentencing hearing of both cases. Tribble alleges defense counsel allowed "AUSA Witherspoon" to send a threatening letter "via attorney Kathy Evett," his attorney in South Carolina, to him. The letter allegedly instructed him that if he did not plead guilty in both the Tennessee and South Carolina cases, his wife and children would be the subject of retaliation.[10] Tribble contends that due to counsel's ineffective assistance, his guilty pleas in both cases were coerced. The Court concludes, as explained below, that Tribble has not demonstrated his guilty plea was coerced. Therefore, he has failed to demonstrate either of his defense counsel were ineffective.

Rule 11, Federal Rules of Criminal Procedure requires the Court to ask the defendant certain questions which creates a record that can be relied upon to insulate the guilty plea in any future appeals and collateral attacks. *Key v. United States*, 806 F.2d 133, 136 (7th Cir. 1986). In determining whether a plea is coerced, a court considers the defendant's answers to the questions posed at his Rule 11 hearing, which carry a strong presumption of veracity. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The provisions in Rule 11 specifically seek to ensure that entry of a plea is a intelligent and voluntary act. Great care is taken when accepting pleas under Rule 11 to place plea agreements on the record; ascertain the voluntariness and accuracy of the plea; provide detail advice to the defendant concerning his rights and the consequences of his plea; and to make a determination that the defendant understands these matters.

"Where the court has scrupulously followed the required procedure, the defendant is bound

---

[10] The Court observes that Tribble's wife was his indicted co-defendant in the South Carolina cases (Crim Case No. 1:02-cr-188, Court File No. 2).

by his statements in response to the court's inquiry." *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir.), *cert. denied*, 508 U.S. 943 (1993), *Baker v. United States*, 781 F.2d 85, 90 (6th Cir.), *cert. denied*, 479 U.S. 1017 (1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir.), *cert. denied*, 426 U.S. 953 (1976)). The United States Supreme Court has explained that when the voluntariness of a guilty plea is being evaluated, courts should consider the following:

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

The Courts scrupulously followed the Rule 11 procedure and Tribble is bound by the sworn statements he made in response to the Court's inquiry under Rule 11. *Warner v. United States*, 975 F.2d 1027, 1212 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993). Tribble's allegation that he entered a coerced plea is refuted by the record. His formal declarations made in person, in writing, and in open court, carry a strong presumption of truth, and stand in stark contrast to the claims he now makes. Tribble's allegation of coerced guilty plea is contradicted by the written plea agreements in these cases (Crim. Case No. 1:01-cr-68, Court File No. 43; Crim. Case No. 1:02-cr-188, Court File No. 63) and by the Rule 11 proceedings in which Tribble acknowledged under oath that his pleas were voluntary and the district judge so found (Crim. Case No. 1:01-cr-68, Court File No. 46; Crim. Case No. 1:02-cr-188, Court File No. 4). The procedure in this district for taking a guilty plea includes the Court asking each defendant whether anyone threatened him or forced him to plead guilty. Tribble was asked, during each rearraignment proceeding, whether anyone threaten him or forced him in any way to plead guilty and he responded "no."

In light of his sworn statements to the contrary during the criminal proceedings, the Court finds his claim of coercion to plead guilty incredible and unsupported by the record. Tribble's allegation that his attorney coerced him into pleading guilty rests largely on the contention that the government sent a letter and they held his wife in jail, sending implied threats of prosecution and deportation, if Tribble did not plead guilty. Tribble also complains that he was forced to enter guilty pleas because his daughters were "in limbo with no parents, in custody of third parties." (Court File No. 12, p. 3). Tribble has not presented the letter, affidavits, or any credible evidence to support these contentions. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Tribble's factually unsupported allegations do not raise a constitutional issue.

Therefore, Tribble is not entitled to an evidentiary hearing on this issue. If the Court were to allow an evidentiary hearing on this claim, it would undermine and eliminate the chief virtues of the plea bargain process -- speed, economy, and finality. *Blackledge*, 431 U.S. at 71-72. To permit collateral attacks on guilty pleas to be based on mere conclusive claims would make every guilty plea subject to attack under § 2255 and render the oral responses given by a defendant pursuant to Rule 11 meaningless. *Blackledge*, 431 U.S. at 74. The Court's conclusion that Tribble's plea was not coerced demonstrates counsel was not ineffective and Tribble did not suffer any prejudice.

In conclusion, Tribble, making nothing more than self-serving allegations that his pleas were coerced, has not satisfied his heavy burden of rebutting the presumption of the declarations he made in open court. Tribble has failed to demonstrate his pleas were coerced; thus, he has failed to

demonstrate counsel was deficient. Accordingly, Tribble's claim that his defense attorneys were ineffective because they coerced his guilty plea must fail.

### 2. *Conflict of Interest*

Tribble claims that Ms. LaLumina had a conflict of interest because she had represented Mr. John Wagner, prior to representing Tribble. Mr. Wagner and Tribble were suspects in the case involving a threatening communication to the federal judge who recused himself. Ms. LaLumia withdrew as counsel for Tribble because "the Federal Defender has represented an individual with interest adverse to those of [Tribble][.]" (Crim. Case No. 1:01-cr-68, Court File No. 49).

Unless Tribble can establish that his counsel 'actively represented conflicting interest,' he has not established the constitutional predicate for his claim. *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980). A conflict of interest will be established if the conflict is "actual and significant, not irrelevant or 'merely hypothetical.'" *Id*. However, prejudice is presumed if a conflict of interest is proven because there is a breach of loyalty in such cases.

To demonstrate his attorney had an actual conflict of interest, Tribble must demonstrate counsel "'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland v. Washington*, 466 U.S. 668, 692 (1984). This is not a situation where counsel was representing co-defendants or where the outcome of Tribble's case was in any way related to the case in which the Federal Defender previously represented Mr. Wagner. Indeed, there is no evidence that the case in which the Federal Defender previously represented Mr. Wagner was in any way related to Tribble's case. Although both Mr. Wagner and Tribble were implicated in the threatening letter case, there is no proof that an actual conflict of interest affected Ms. LaLumia's representation of Tribble in the instant case.

16

Tribble has presented no proof that an actual conflict existed at the time of his rearraignment. First, the Court observes that the motion to withdraw does not specify which attorney employed at the Federal Defender Services actually represented Mr. Wagner. Even assuming *arguendo* that Ms. LaLumia represented Mr. Wagner two months prior to representing Tribble, there is no proof that such representation had any effect on her representation of Tribble. There is no proof the presumed representation was related in any way to the instant case or that shared confidences were violated due to the representation. Tribble has established neither deficient performance nor prejudice.

In sum, Tribble has neither presented an actual conflict nor assuming without finding that there was a conflict, that the conflict of interest adversely affected his lawyer's performance. The Court concludes that Tribble failed to demonstrate counsel had an actual conflict of interest; thus, he has failed to demonstrate counsel was ineffective or that he suffered any prejudice as a result of counsel's prior representation of Mr. Wagner.

### D.    *Prosecutorial Misconduct*

Tribble also maintains the prosecutor coerced him into entering a guilty plea when she wrote the alleged letter threatening to keep his wife (his indicted co-defendant in the South Carolina cases) incarcerated and his children in the custody of someone other than their mother or father (both parents were in jail at the time).

"'[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor,' *Smith v. Phillips*, 455 U.S. 209, 219 (1982), and that 'the appropriate standard of review for ... a claim [of prosecutorial misconduct] on writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.' *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)." *Slagle v. Bagley*, 457 F.3d 501, 516 (6th

Cir.2006). The critical question is whether the conduct by the prosecutor so infects the trial with unfairness as to deny the defendant due process in the resulting conviction. *Darden v. Wainwright*, 477 U.S. at 180-81.

A defendant collaterally attacking his sentence or conviction pursuant to § 2255 has the burden of proving the grounds for collateral attack by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980); *United States v. Stifel*, 594 F.Supp. 1525, 1528 (N.D. Ohio, 1984); and *McNeil v. United States*, 72 F.Supp.2d 801 (N.D. Ohio, 1999). As previously determined, the Court finds that Tribble has failed to prove, under any standard, that the prosecutor coerced his guilty plea. Tribble has failed to submit any credible proof that the prosecutor coerced him into pleading guilty. Tribble does not provide any factual support for his allegation: the letter, an affidavit from trial counsel supporting this claim, or his own affidavit. Consequently, Tribble's bare allegation that the government threatened retaliation to his wife and children if he did not plead guilty is insufficient to warrant an evidentiary hearing. Accordingly, Tribble is not entitled to § 2255 relief on his prosecutorial misconduct claim.

### E.      *Sentencing Guidelines Claim*

Tribble challenges his sentencing guidelines criminal history score, arguing that the crimes in paragraph 72 and 73 of the PSI Report were erroneously used, in violation of USSG § 4A1.2(e)(3), as a basis for increasing his criminal history points on the federal charges. Tribble contends his 1984 and 1987 sentences expired on September 16, 1991, and therefore these convictions were improperly counted.

Tribble's factually unsupported assertions that certain sentences expired prior to the dates reflected in the PSI report are insufficient to demonstrate the USSG calculations were inaccurate. Tribble has inadequately pled this claim under Rule 2(b) of the Rules Governing Section 2255 Cases in the United States District Courts, which requires claims be plead with factual specificity. Tribble's claim fails to "state the facts supporting" his sentencing guideline claim. Rule 2(b) of the Rules Governing Section 2255 Cases in the United States District Courts. Thus Tribble's claim of prosecutorial misconduct will be dismissed for failing to set forth in summary form the facts supporting this claim. Rule 2(b) of the Rules Governing Section 2255 Cases in the United States District Courts.

Although Tribble filed an objection to the conviction identified in paragraph 72 prior to his sentencing hearing, he specifically did not dispute "application of the three criminal history points referenced by numbered paragraph 72[,]" although he did not admit "the factual narrative of that paragraph or the manner in which his involvement has been characterized." (Addendum to the PSI Report, p. 5 of 6). Tribble committed the crimes in the case at bar between August 25, 1999, and October 17, 2001. Tribble does not dispute that he was incarcerated on the charge identified in paragraph 72 until December 31, 1986. Nor does he dispute that he was incarcerated on the charge identified in paragraph 73 until September 28, 1991. Therefore, Tribble's incarceration on those two charges extended into the 15-year period prior to Tribble's commencement of the instant offense as required in Application Note 1 to USSG § 4A1.1(a) which provides that "[a] sentence imposed more than fifteen years prior to the Defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen year period."

A sentence which is based on materially false information is not consistent with due process of law. *United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Fry*, 831 F.2d 664, 667 (6th Cir. 1987). In order to show a due process violation, a defendant must raise grave doubt as to the veracity of the information in the presentence report and show the Court relied on the material false information in determining the sentence. *United States v. Fry*, 831 F.2d at 667; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984), *cert. denied*, 469 U.S. 1196 (1985). Tribble has failed to raise grave doubt as to the veracity of the presentence report. Even if Tribble is correct in his argument that he was not incarcerated in 1995, this does prove his last period of incarceration on the counted convictions was not within fifteen years prior to his commencement of these offenses in August of 1999.

The Court concludes the sentences for the convictions listed in paragraphs 72, 73, and 74 were properly included in the calculation of Tribble's sentencing guidelines criminal history points. Accordingly, this claim is without merit.

Tribble also attacks his sentence contending he was sentenced in violation of *United States v. Booker*, 543 U.S. 220 (2005) (the Supreme Court held the mandatory nature of the federal sentencing guidelines rendered them incompatible with the Sixth Amendment guarantee to the right to a jury trial). At the time Tribble was sentenced *Booker* had not been decided by the United States Supreme Court. At this time, *Booker* has not been held to be retroactively applicable to cases already final on direct review.

The Sixth Circuit has specifically determined *Booker* is not applicable on collateral review. *See Valentine v. United* States, 488 F.3d 325, 329 (6th Cir. 2007) (*Booker* cannot now be raised by defendants whose convictions became final at any time prior to *Booker's* January 12, 2005

issuance); *Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005) (*Booker's* rule does not apply retroactively in collateral proceedings). Tribble has no viable claim under *Booker*.

**V.      CONCLUSION**

For the reasons stated above Tribble is not entitled to any relief under 28 U.S.C. § 2255 as neither his convictions nor sentencing were in violation of the Constitution or laws of the United States. Accordingly, Tribble's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 motion will be **DENIED**.

An appropriate judgment will enter.


**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**